**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------X

TATIANA MORILLO,

                         Plaintiff,

        -against-

JETBLUE AIRWAYS CORPORATION,

                        Defendant.

---------------------------------------------------X

Civil Action No.: `17-cv-1524`

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff, TATIANA MORILLO, by and through her attorney, CHAUNCEY D. HENRY, ESQ., of the HENRY LAW GROUP, alleges and complains as follows:

**INTRODUCTION**

1. This action is brought against Defendant on the basis of it discriminating against Plaintiff based on gender, and in retaliation for opposing discriminatory practices and/or participating in protected activity. Defendant engaged in discrimination by inflicting disparate treatment during the course of Plaintiff's employment, creating, fostering and encouraging a hostile work environment, and wrongfully terminating Plaintiff's employment for reasons motivated and fueled by discriminatory animus and in retaliation for Plaintiff engaging in protected activity. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2002, et. seq.: for Discrimination In Terms and Conditions of Employment; Disparate Treatment in the Terms, Conditions, or Privileges of Employment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(A)(1); Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964; Discharge from Employment in Retaliation for the Exercise of Rights Protected by Title VII, 42 U.S.C. §§ 2000e to 2000e-17; New York State, Executive Law, Article 15, Human Rights Executive Law §296(1)(a) for discrimination based upon Gender; Retaliatory Discharge in

1

Violation of New York State Human Rights Law § 296(1); New York City Human Rights Law §8-107(1)(a) for discrimination based upon Gender; and, Breach of Contract under Pendant Jurisdiction. Plaintiff seeks to recover monetary damages, equitable relief, reasonable attorney fees, costs, and disbursements.

## JURISDICTION AND VENUE

1. Jurisdiction is specifically, and properly, conferred upon this United States District Court by the aforementioned statues, as well as under 28 U.S.C. §§ 1331, 1343.

2. Jurisdiction may also be appropriate under 42 U.S.C. §§ 1981, 1983, and 1985(3), as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, and any related claims under New York law conferred upon this United States District Court by Pendant Jurisdiction.

3. This action is brought against Defendant for employment discrimination pursuant to  Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e to 2000e-17.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) in light of the fact that the events described herein all occurred in the Eastern District of New York.

## PROCEDURAL REQUIREMENTS

5. Upon information and belief, on or about March 8, 2016, Plaintiff filed a timely charge with the New York State Division of Human Rights ("NYSDHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

6. Subsequently, upon information and belief, the EEOC issued a Notice of Right to Sue Letter on or about December 14, 2016, permitting Plaintiff to properly bring suit in an appropriate United States District Court pursuant to 42 U.S.C.A. § 2000e and its related state and local laws.

2

7.  Upon information and belief, Plaintiff received the EEOC Notice of Right to Sue letter in or about December 19, 2016 and commenced the instant action within the statutory ninety (90) day period and has accordingly exhausted all required administrative remedies prior to the commencement of the instant action. Said Right to Sue letter is attached herewith as **Exhibit A**, and is further incorporated herein by reference.

## PARTIES

8.  Upon information and belief, at all times relevant hereto, Plaintiff Tatiana L. Morillo (hereinafter "Plaintiff" or "Morillo"), is a resident of the State of New York, with an address of 135-05 Hoover Avenue, Apartment 2F, Kew Gardens, New York, 11455.

9.  Upon information and belief, Defendant, JetBlue Airways Corporation (hereinafter "Defendant" or "JetBlue") is a corporation incorporated in Delaware with its principal place of business in New York, located at 27-01 Queens Plaza North, Long Island City, New York 11101. Defendant has approximately 13,220 employees within the United States.

10. Upon information and belief, during the relevant period herein, Defendant employed in excess of fifteen (15) employees at any given time, and is an employer within the meaning of Title VII of the Civil Rights Act of 1964.

## FACTUAL ALLEGATIONS

I.   *Ms. Morillo's Protected Status/Class*

11. Upon information and belief, during the relevant period herein, Plaintiff belonged to a protected class and/or group, specifically those females qualified for the position sought and maintained prior to the events giving rise to the instant action.

II.  *Ms. Morillo's Employment History and Qualification*

a.  *Ms. Morillo's Employment History with JetBlue*

12. Upon information and belief, on or about October 12, 2005, Plaintiff began her employment with Defendant JetBlue in the title of Flight Attendant.

13. Upon information and belief, during the relevant period herein, Plaintiff's primary duties as an Inflight crewmember, included but were not limited to insuring the safety and comfort of customers, delivering high-quality and award-winning services to Defendant's Customers, and accommodating passenger's needs. Inflight crewmembers also assist passengers with their luggage and provide full tray services to the passengers.

> b. *Ms. Morillo was Qualified for the Position Held*

14. Upon information and belief, prior to the relevant period hereto, Plaintiff, through diligence, hard work, dedication and excellent job performance was the subject of numerous compliments from clients as well as co-workers and supervisors. Plaintiff was a well–liked and respected Crewmember.

III.   *Disparity in Terms and Conditions of Employment as a Result of Gender*

15. Upon information and belief, during the relevant period hereto, Defendant's female employees were treated unequally as compared to senior male employees and/or agents of Defendant.

16. Upon information and belief, Defendant was suspended and eventually terminated for violating JetBlue's policies, such as: (1) Disruption of JetBlue Business; (2) Abusive language; (3) Incompetence, misconduct, including professional misconduct; (4) Abusive or inconsiderable treatment of customer, fellow crewmembers/business partners; (5) Insubordination; and (6) Conduct against JetBlue policy; in comparison, Defendant's similarly situated male counterparts were not exposed to such harsh employment consequences.

a.   *Incident # 1 with Captain Bradley*

17. Upon information and belief, on or about October 2014, Plaintiff was working a flight from San Juan, Puerto Rico to New York, Flight # 1304 with Defendant's Pilots, Eugene Bradley (hereinafter "Captain Bradley") and "John Doe."

18. Upon information and belief, during the flight, Captain Bradley rudely demanded Plaintiff via intercom to report to the Flight Deck (cockpit).

19. Upon information and belief, due to safety concerns, it is Defendant JetBlue's policy that two persons must be present in the Flight Deck at all times. Therefore, when the Captain or the First Officer (collectively, "the Pilots") steps out of the Flight Deck, an Inflight Crewmember must remain in the Flight Deck until the Pilot returns.

20. Upon information and belief, once Plaintiff arrived to the Flight Deck, "John Doe", the First Officer (hereinafter "F/O") exited the Flight Deck for a lavatory break, leaving Plaintiff alone in the Flight Deck with Captain Bradley.

21. Upon information and belief, while waiting for the F/O to return, Captain Bradley questioned Plaintiff about the service bag (trash bag) hanging out of her apron. Plaintiff explained to Captain Bradley that she had just completed service item pick-ups from the passengers. Then, Captain Bradley rudely interrupted, stating that he did not receive a service bag. Plaintiff politely provided Captain Bradley with the service bag and stated that he should have asked for one or taken one when he noticed he did not receive a service bag.  Captain Bradley responded that it is not his job as a Captain to provide service bags. In response, Plaintiff reminded Captain Bradley that service bags were provided as a courtesy only.

22. Upon information and belief, during the relevant period hereto, Plaintiff and Captain Bradley had previously worked together on several flights, including mission work. From past

5

experiences, Plaintiff was aware of Captain Bradley's dry humor. During their communication in the Flight Deck, Plaintiff was under the impression that Captain Bradley was being sarcastic and/or joking with her.  However, when she noticed Captain Bradley's serious reaction to her comment, she remained quiet.

23. Upon information and belief, once Plaintiff noticed that Captain Bradley was being disrespectful; to avoid further altercation, she began to read a magazine. Captain Bradley continued to stare at Plaintiff in a rude manner making her feel very uncomfortable.

24. Shortly thereafter, upon information and belief, once the F/O returned, and Captain Bradley was preparing to exit the Flight Deck he stated to Plaintiff "Don't sit on my seat! Don't sit on my God Damned seat!" Plaintiff responded that she will need to sit on Captain Bradley's seat if there is turbulence, because if she remains standing she may get injured.  Captain Bradley stated to the F/O that "She better not sit on my seat", slammed the door and left.

25. Upon information and belief, as per Defendant JetBlue's policy, while an Inflight Crewmember is in the flight deck, the Inflight crewmember must be seated in the jump-seat. However, in instances when Pilots strap their luggage in the jump-seat and therefore rendering the jump-seat inaccessible, Plaintiff's customary practice is to sit on top of the luggage on the jump-seat until the Pilot returns.

26. Upon information and belief, during the relevant period herein, while Plaintiff was in the Flight Deck, the jump seat was inaccessible because Captain Bradley's luggage was strapped to the seat. Therefore, Plaintiff sat down on top of the luggage until Captain Bradley's return.

27. Upon information and belief, while Plaintiff was in the Flight Deck with the F/O, the F/O inquired if Plaintiff ever had any previous altercations with Captain Bradley. Plaintiff responded in the negative. F/O stated "well he has it out to get you."

6

28. Upon information and belief, during the relevant period hereto, when Captain Bradley stepped out for a lavatory break, he stated to Gustavo Gomez (hereinafter "Gustavo"), Inflight Crewmember, "What's that bitches problem; she has an attitude" and left to the lavatory, slamming the door.

29. Upon information and belief, during the relevant period hereto, once Plaintiff was out of the Flight Deck, Gustavo informed Plaintiff about Captain Bradley's comment and suggested Plaintiff to avoid any further interaction with Captain Bradley while on the flight.

30. Upon information and belief, about an hour prior to landing, Captain Bradley, once again contacted the flight crew via intercom that he needs another break. This time, Gustavo went to the Flight Deck and Plaintiff remained outside the Flight Deck with her co-worker, Inflight Crewmember, Carolina Gomez.

31. Upon information and belief, once Captain Bradley saw Plaintiff, he approached to her and stated "We are going to do a little debriefing." Plaintiff responded that the matter could be handled between the two of them personally. Captain Bradley proceeded to get loud and stated "I can't believe I am arguing with a damn flight attendant." Plaintiff responded that he can speak with her Inflight Supervisor. Captain Bradley responded by stating "get your damn little supervisor" and he slammed the lavatory door.

32. Upon information and belief, once the flight landed, two supervisors were waiting for Plaintiff – Elizabeth Perez and "Jane Doe". Plaintiff explained to the Supervisors what had occurred and was instructed to go home and they would investigate the concerns with Captain Bradley.

33. Upon information and belief, while heading home, Plaintiff received a call from Supervisor "Jane Doe", who informed her to make a report since Captain Bradley's statements were conflicting with hers.

34. Upon information and belief, on or about December 26, 2014, upon returning back from Aruba to New York,   Rodney Johnson (hereinafter "Mr. Johnson"), Inflight Team Leader, had Plaintiff taken to JFK Inflight Crew Lounge Conference room where she was informed that she was being suspended without pay pending investigation based on an alleged safety violation on the flight incident with Captain Bradley.

35. Upon information and belief, Plaintiff was informed that Captain Bradley stated that Plaintiff sat on both, Captain's seat and the First Officer's seat ,which posed a safety violation. Plaintiff denied the allegation.

36. Upon information and belief, at the conclusion of the meeting, Plaintiff was told not to discuss this incident with anyone.  Due to Plaintiff's emotional state, she was given twenty-four (24) hours to submit a final statement of the incident. Plaintiff requested copies of reports she had submitted in the past regarding the incident with Captain Bradley; however, such request was summarily denied and ignored.

37. Upon information and belief, during the relevant period hereto, Mr. Johnson asked for Plaintiff's badge and employee manual to be handed over immediately. Corporate Security then escorted Plaintiff off the premises in a very humiliating and degrading manner.

38. Upon information and belief, Plaintiff was suspended from work beginning December 26, 2014 through February 3, 2015.

39. Upon information and belief, upon Plaintiff's return back to work, on February 3, 2015, Plaintiff had a meeting with Base Manager, Marlies Migliori (hereinafter "Ms. Migliori").

Plaintiff was informed by Ms. Migliori that she may return to work but she will be placed on Final Progressive Guidance (FPG).

40. Upon information and belief, at the meeting, Plaintiff requested Inflight Values Committee (hereinafter "IVC") member, Ronald Gamble (hereinafter "Mr. Gamble) to be present as a witness. Due to Mr. Gamble's reputation at Defendant JetBlue, it was concluded that Plaintiff may return with FPG, however, the FPG would be dismissed and removed if the co-workers validated Plaintiff's statements.  It was requested and assured that the draft of the FPG paperwork would be edited to indicate this.

41. Upon information and belief, on or about March 2015, Mr. Johnson verbally notified Plaintiff that her FPG was dismissed and removed from Plaintiff's records. Plaintiff's co-workers, Mr. Gustavo and Ms. Gomez submitted reports in concurrence with Plaintiff's statement. Plaintiff did not receive a document stating that the FPG was removed.

b. *Incident # 2 with Captain Stevens*

42. Upon information and belief, on or about July 16, 2015, Plaintiff  was working a flight from Orlando, Florida to New York, on Flight # 484 MCO-JFK with Defendant's Captain, Steve Stevens (hereinafter "Captain Stevens").

43. Upon information and belief, during the relevant period herein, Plaintiff was welcoming passengers aboard the aircraft and assisting them to take their respective seats. A passenger, with an infant and a toddler, required assistance in installing the baby car seat in Row 1. Plaintiff, as per standard practice, held the infant child, as the passenger installed the seat. While holding the child, Plaintiff continued to greet passengers as they aboard the aircraft.

44. Upon information and belief, while assisting the passenger, Captain Stevens requested water from Plaintiff. Since Plaintiff was holding the young child, she politely responded, "You can help yourself."

45. Upon further information and belief, shortly thereafter, Captain Stevens returned back to Plaintiff and requested water for a second time; however, this time Plaintiff's back was towards Captain Stevens, since she was securing the infant child. Plaintiff responded, "Just give me a second; I will be right there."

46. Upon information and belief, once done with assisting the passenger and the infant, Plaintiff approached Captain Stevens in the Flight Deck, asking: "How can I help you?" Captain Stevens completely ignored her.

47. Upon information and belief, Plaintiff then returned to welcoming and assisting passengers aboard. Shortly thereafter, Supervisor Michael Lodini, (hereinafter "Supervisor Lodini") arrived to the aircraft due to a complaint logged by Captain Stevens. Plaintiff was working the lead position on the flight, and therefore, the first person Supervisor Lodini came into contact was Plaintiff and informed her that he was responding to a complaint that was logged. Plaintiff responded she was unsure as she did not log any complaint. Plaintiff was unaware that Captain Stevens logged a complaint against her. Supervisor Lodini did not investigate and left the aircraft.

48. Upon further information and belief, Supervisor Lodini returned a second time, due to Captain Stevens calling again. This time Supervisor Lodini directly spoke with Captain Stevens, who informed Supervisor Lodini that he wants Plaintiff removed from the flight.

49. Upon information and belief, Plaintiff, as well as Supervisor Lodini requested from Captain Stevens on numerous occasions an explanation of the issue with Plaintiff in order to resolve

the conflict. However, Captain Stevens refused to speak with Plaintiff and continuously demanded the removal of Plaintiff from the flight for being insubordinate.

50. Upon information and belief, Plaintiff was removed from the aircraft by Supervisor Lodini. Supervisor Lodini advised Plaintiff to write a report and stated that Captain Stevens was being very irrational.

51. Upon information and belief, on or about July 2015, Plaintiff was requested to report to her Inflight Supervisors, Ms. Migliori and Mr. Johnson. Plaintiff was informed that she was being placed on two separate Progressive Guidance (hereinafter "PG") – insubordinate and dependability.

52. Upon information and belief, on or about August 2015, Plaintiff reported to the IVC, the Base Manager for MCO, Juan Ramos, and Ms. Migliori regarding the incident with Captain Stevens. Mr. Lodini submitted an e-mail favoring Plaintiff. The IVC Committee reviewed the matter and dismissed both PGs for insubordination and dependability.

c. *Incident # 3 with Passengers*

53. Upon information and belief, on or about October 27, 2015, Plaintiff was to work a flight from JFK to Punta Cana, Dominican Republic, flight number 869.

54. Upon information and belief, during the boarding process, a family was blocking the aisle for passengers to board the flight. Plaintiff politely requested the family member, Mr. Kimchy, seat number 15C, on numerous occasions if the family can move to the side, so that the other passengers can board.  Plaintiff further informed the family that she can provide them with assistance if needed. Mr. Kimchy responded loudly and rudely to Plaintiff stating, "I'll move when I want too."

55. Upon information and belief, despite the family's interference, Plaintiff continued to board the passengers. Towards the end of the boarding period, Plaintiff once again approached the family and asked if she can provide them with any assistance. Mr. Kimchy once again stated loudly, "I told you I'll move when I'm ready to move!"

56. Shortly thereafter, upon information and belief, Plaintiff approached Mr. Kimchy for the third time to ask if everything was okay. Mr. Kimchy responded "Why don't you go somewhere." Plaintiff responded that it is her aircraft and she cannot go anywhere. Mr. Kimchy began cursing and mocking Plaintiff and began making a video of the incident.

57. Upon information and belief, Plaintiff for the final time approached Mr. Kimchy and requested the family to settle down so that they can prepare for takeoff. Mr. Kimchy, in turn stood up, and began to yell and tell the passengers, "She's antagonizing me! She's harassing me! You see this, guys?"

58. Upon information and belief, during the relevant period herein, another passenger, Mr. Gregory Lakhan (PNR # ZVPBPR) in seat number 16B, interfered and stated "she is not harassing you. She's just asking if you're okay. Now if you're not okay then we are going to have a problem because we just want to go already." Plaintiff responded with a thank you to Mr. Lakhan. Mr. Kimchy continued to be visibly upset.

59. At that point, upon information and belief, Plaintiff requested her co-worker, Nicco Onolfi (hereinafter "Mr. Onolfi"), to assist her in defusing the situation. Mr. Onolfi attempted to assist the family; however, Mr. Kimchy, once again, was rude, and consistently shouting and cursing at the crewmembers.

60. Eventually, upon information and belief, Captain Thiberg was called to assist in the situation. The family began to threaten Plaintiff stating "I am going to find you." Plaintiff felt unsafe in

the flight with Mr. Kimchy. Captain Thiberg called for Corporate Security to remove the family from the aircraft.  Corporate Security had called Port Authority Police for assistance.

61. Upon information and belief, Port Authority Police came aboard the aircraft as well as Anthony Falcone Jr. (hereinafter "Mr. Falcone"), JFK Inflight Base Manager. Mr. Falcone assisted in removing the family off the aircraft.

62. Upon information and belief, once Mr. Kimchy was removed, the remaining family continued to be irate causing the crew members to feel unsafe. Therefore, the remaining family members were removed from the flight as well.

63. Furthermore, upon information and belief, Plaintiff was informed by Mr. Falcone that she was being removed from the flight so that she can file a report with Port Authority as to what occurred, since she was the primary person involved in the incident and was directly threatened by the family.  She was further informed that she would be paid for the flight.

64. Upon information and belief, once off the aircraft, Plaintiff was debriefed by her Inflight Supervisor, Ms. Migliori. Plaintiff submitted her written report to her supervisors.

65. Upon information and relief, within a few hours after the incident, Plaintiff received an email from Mr. Falcone commending her for the way she handled the situation and was given a LIFT AWARD for safety.

IV.    *Defendant's Retaliatory Treatment of Plaintiff*

      a.  *Hostility Against Female Employee's*

66. Upon information and belief, on or about November 2015, Plaintiff was requested to report to Defendant's Human Resources Department, the People's Department, for a meeting regarding the family incident that occurred in October 2015 with Vivienne Jackson-Almeida (hereinafter "Mrs. Jackson-Almeida"), Regional Manager at the People's Department and

Joanne Giuga (hereinafter "Mrs. Giuga"), Field Generalist at JFK, (collectively, "People's Department").

67. Upon information and belief, People's Department asked Plaintiff questions regarding what occurred on the flight with the family, cross-checked information and verified facts. While inquiring about the family incident, the People's Department suddenly inquired about a "snitch list" posted on social media.

68. Upon information and belief, it was alleged that Plaintiff made negative remarks about Captain Bradley and created a "snitch list" on the social media. Plaintiff informed the People's Department that she was unaware of a "snitch list"; she does not even know where the "snitch list" is and how it is made.

69. Upon information and belief, as early as, December 26, 2014 until the present time Plaintiff had received numerous phone calls and text messages from fellow Crewmembers about Captain Bradley discussing the incident that occurred in October 2014.

70. Upon information and belief, Plaintiff addressed on numerous occasions, verbally and via email, to Ms. Migliori, Mr. Johnson, and to Julie Paulino (hereinafter "Ms. Paulino"), the Field Generalist at Defendant JetBlue issues regarding Captain Bradley's behavior and breach of the agreement that was made.

71. Upon information and belief, in or about August 2015, Plaintiff had contacted Ms. Paulino regarding Captain Bradley's comments and remarks about the incident that had occurred in October 2014. Ms. Paulino closed the case since Plaintiff was unable to substantiate her claims with crewmembers names. Crewmembers feared retaliation and other repercussions for coming forth against Captain Bradley. Therefore, the case closed and no action was taken against Captain Bradley.

72. Upon information and belief, during the relevant period hereto, Defendant JetBlue favored its senior male pilot employee, Captain Bradley, by taking immediate action upon his complaint of a "snitch list." However, Defendant JetBlue gave no attention or importance to Plaintiff's report against him.

       b. *Plaintiff Placed on Final Progressive Guidance*

73. Upon information and belief, on or about January 5, 2016, Plaintiff was informed to meet with Ms. Migliori and Mr. Johnson prior to her scheduled work shift. At the meeting, Plaintiff was informed that she was being placed on Final Progressive Guidance for Performance in regards to the issue with Captain Bradley and the "snitch list" as per the People's Department.

74. Upon further information and belief, Plaintiff was placed on FPG due to (1) the incident with the family on October 27, 2015; (2) the incident with Captain Stevens on July 16, 2015; and (3) the incident with Captain Bradley on November 2014, all leading to the conclusion that Plaintiff has performance issues. Therefore, Plaintiff was required to complete "Respectful Workplace Training" within thirty days.

75. However, upon information and belief, each of the above mentioned incidents were dismissed: (1) Plaintiff was commended for her performance and received a LIFT Award from Mr. Falcone; (2) Both of the PG's were dropped by the IVC; and (3) the FPG was dropped due to the co-workers concurring statements and Plaintiff served her time by being suspended for several weeks.

       c. *Plaintiff Suspended a Second Time*

76. Upon information and belief, on or about February 9, 2016, Mr. Johnson notified Plaintiff via e-mail regarding a complaint logged by Defendant's Customer on Flight # 324, from Los

Angeles, California to New York for Plaintiff's behavior and treatment towards the customer. The complaint further stated that Plaintiff needs workplace training. Plaintiff requested for a copy of the details of the complaint; however such request was denied.

77. Upon information and belief, on or about February 12, 2016, Plaintiff arrived early to her regular work shift to discuss with Mr. Johnson about the complaint that was logged against her. Mr. Johnson asked Plaintiff to immediately report to the JFK Inflight Crew Lounge Conference room.

78. Upon information and belief, during the relevant period herein, Plaintiff requested a witness prior to the meeting. Such a request was initially denied by Mr. Johnson; however, Plaintiff insisted that she is allowed a witness as per Defendant JetBlue's employee manual. Upon Ms. Migliori's approval, she allowed one randomly selected witness. Plaintiff had Shrisha Darling, Inflight Crewmember, as a witness for the first half of the meeting and Peter Gonzalez, Inflight Crewmember, for the second half of the meeting.

79. Upon information and belief, at the meeting, Plaintiff was provided with a copy of the Complaint, of which the customer's information was redacted.  Typically, customer's information and/or seat number is always revealed to crewmembers. However, Plaintiff was denied access to any information of the customer.

80. Upon information and belief, on or about January 16, 2016, Plaintiff was working on flight # 324 from Los Angeles to New York in the F4 position.  As an F4, Plaintiff was not in the aisle during the boarding process.  Plaintiff was preparing for the flight, specifically, counting liquor and eat-up boxes, making snack baskets and getting them ready for fellow crewmembers. Plaintiff does not recall any incident with a customer on the flight, especially assisting a customer finding a secured location for the customer's coat.

81. Upon information and belief, Mr. Johnson further informed Plaintiff that the customer suggested Plaintiff requires further training which coincides with the January 2016 FPG requiring Plaintiff to complete the "Respectful Workplace Training," which she failed to do so.

82. Upon information and belief, Plaintiff informed Mr. Johnson that she had rebutted the required training and did not receive a follow-up response. Plaintiff addressed that the January 2016 FPG was due to false accusations and for matters that had previously been dropped and/or resolved. Furthermore, over the course of Plaintiff's employment she has received numerous customer letters praising her impeccable customer service and therefore, the training should not have been mandated.

83. Upon information and belief, Mr. Johnson responded that the training was not up for discussion and therefore, Plaintiff is being suspended without pay pending investigation due to the customer complaint and failure to attend the "Respectful Workplace Training".

V.   *Plaintiff's Interest in the Aircraft Dispatcher Position and Defendant's Willful Sabotage*

84. Upon information and belief, during the relevant period herein, Defendant JetBlue's supervisory employees were aware for at least two years of Plaintiff's interest in a new position opening in February 2016 for an Aircraft Dispatcher.

85. Upon information and belief, Plaintiff has been showing an interest in the position for over two years. Plaintiff has been shadowing various dispatchers' at JetBlue to build experience and to prove a strong candidate for the position.

86. Upon further information and belief, Plaintiff has been qualified and licensed to serve as an airport dispatcher. Plaintiff attended Flight Safety International School at LaGuardia Airport and received her Aircraft Dispatcher License in March 2014.

87. Upon information and belief, Plaintiff is unable to apply or be promoted to the Aircraft Dispatcher position with FPG on her records.

88. Upon further information and belief, on or about February 12, 2016, Defendant JetBlue, in an effort to prevent Plaintiff from being able to apply to the Aircraft Position, suspended Plaintiff pending investigation the day the position became open to apply.

VI.   *Plaintiff's Wrongful Termination*

89. Upon information and belief, in or about February 22, 2016, Plaintiff received a telephone call from Sonia Goodman, In-Flight Team Leader and Mr. Johnson regarding the result of the investigation surrounding the suspension. Plaintiff was notified that she is being terminated for violating several JetBlue polices: (1) Disruption of JetBlue Business; (2) Abusive language; (3) Incompetence, misconduct, including professional misconduct; (4) Abusive or inconsiderable treatment of customer, fellow crewmembers/business partners; (5) Insubordination; and (6) Conduct against JetBlue policy.

90. Upon information and belief, Plaintiff is continually being punished for previous incidents that were already resolved, as a result of her gender and in retaliation for her involvement in protected activity.

91. Upon information and belief, during the relevant period herein, Defendant took no action to stop and/or to investigate Plaintiff's claims of discrimination and retaliation, whether indirect or direct.

VII.   *Plaintiff's Damages*

92. As a result of Defendant's acts and/or omissions, Plaintiff was meant to endure considerable financial losses and emotional damages. Plaintiff is entitled to an award consisting of back pay, front pay, emotional damages and attorney fees, all occurring as a result of Defendant's

discriminatory employment practices, unreasonable, oppressive, willful and malicious acts and/or omissions as committed against Plaintiff hereto.

*Federal Causes of Action*

## COUNT I

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. §2002, ET. SEQ.: DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT

93. Plaintiff repeats and reiterates the allegations set forth in paragraph **1 through 92** inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

94. It shall be unlawful for an Employer to fail or refuse to hire or to discharge any individual or otherwise discrimination against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin.

95. Defendant, as Plaintiff's employer, by and through its agents and employees, discriminated against Plaintiff with respect to Plaintiff's terms, conditions or privileges of employment, because of Plaintiff's gender and/or other protected status.

96. As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, promotional opportunities, emotional distress, loss of sleep, great expense, damage to her reputation, emotional injury to her mind and person, and other injuries not readily apparent.

97. As a direct result of Defendant's acts and/or omissions, Plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs and attorney fees', the sum to be determined by jury trial.

## COUNT II

## DISPARATE TREATMENT IN THE TERMS, CONDITIONS, OR PRIVILEDGES OF EMPLOYMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. §2000e-2(a)(1)

98. Plaintiff repeats and reiterates the allegations set forth in paragraph **1 through 97** inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

99. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1) provides that, "It shall be unlawful for an Employer to limit, segregate, or classify its employees in any way, which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

100.    Defendant JetBlue through its agents and/or supervisory employees, discriminated against Plaintiff in her employment based upon Plaintiff's gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, as amended.

101.    During the course of Plaintiff's employment with Defendant, Plaintiff was meant to suffer and ender verbal attacks, persecution, increased and heightened scrutiny and false accusations of misconduct, all occurring as a result of Defendant's discriminatory animus towards Plaintiff.

102.    Defendant's similarly situated non-female employees were treated more favorably than Plaintiff although having willfully violated Defendant's employee policy.

103.    Defendant subjected Plaintiff to increased job scrutiny in comparison to Plaintiff's non-female counterparts.

104.    Defendant wrongfully and unjustly terminated Plaintiff's employment for pre-textual reasons fueled by discriminatory animus.

105.   As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, loss of employment, loss of income, loss of other employment benefits, promotional opportunities as well as emotional distress, great financial expense, damage to her reputation, and has incurred damages thereby.

106.   As a direct result of Defendants act and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, plus costs and reasonable attorney fees.

**COUNT III**

**HOSTILE WORK ENVIRONMENT UNDER
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

107.   Plaintiff repeats and reiterates the allegations set forth in paragraph **1 through 106** inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto

108.   Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).

109.   In instances when the hostile environment is created by a supervisor, the Plaintiff must assert and prove that (1) Plaintiff is a member of a protected group; (2) Plaintiff was subject to unwanted conduct based on gender; (3) the conduct was objectively severe or pervasive to alter the conditions of the Plaintiff's employment and create an abusive work environment; (4) Plaintiff subjectively perceived the conduct to be abusive; and (5) the employer knew or should have known of the harassment, and failed to take timely and effective corrective action.

21

110.    Plaintiff, a qualified female for her position, suffered through ha series of unwanted emotionally abusive conduct due to her gender. Defendant's supervisory employee, continuously bullied, scrutinized and humiliated Plaintiff during the course of her employment thereby creating a pervasively abusive hostile work environment.

111.     Plaintiff was meant to suffer pervasive and unwelcome harassment during the course of her employment as committed by, and while under the direct authority of, Ms. Migliori – Defendant's employee.

112.    Due to Ms. Migliori's pervasively abusive and hostile behavior, the terms, conditions and benefits of Plaintiff's work experience was severely affected, as she was disturbed, humiliated, and embarrassed by the continuous false and/or resolved allegations.

113.    Despite notifying Defendant's People's Department, Plaintiff was nevertheless wrongfully terminated with Defendant failing to at the very least, investigate Plaintiff's complaint and/or take any corrective action.

114.    As a direct and proximate result of said act, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, promotional opportunities, emotional distress, loss of sleep, great expense, damage to her reputation, emotional injury to her mind and person, and other injuries not readily apparent.

115.    As a direct result of Defendant's act and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, plus costs and reasonable attorney fees.

## COUNT IV

### DISCHARGE FROM EMPLOYMENT IN RETALIATION FOR THE EXERCISE OF RIGHTS PROTECTED BY TITLE VII 42 U.S.C. §§ 2000E TO 2000E-17

116.  Plaintiff repeats and reiterates the allegations set forth in paragraph **1 through 115** inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

117.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to . . . discriminate against any of its employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

118.  Defendant engaged in unlawful employment practice prohibited under 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

119.  Plaintiff was intentionally discriminated against while engaging in protected activity, Plaintiff was terminated from her position under the pretext of performance related issues.

120.  Defendant wrongfully and unjustly terminated Plaintiff's employment for pretextual reasons fueled by discriminatory animus and in retaliation for Plaintiff engaging in protected activity.

121.  As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, promotional opportunities, loss of sleep, great expense, damage to her reputation, emotional injury to her mind and person, and other injuries not readily apparent.

122.    As a direct result of Defendant's act and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, plus costs and reasonable attorney fees.

*State Causes of Action*

## COUNT V

## NEW YORK STATE, EXECUTIVE LAW, ARTICLE 15, HUMAN RIGHTS
### EXECUTIVE LAW §296(1)(a): Gender Based

123.    Plaintiff repeats and reiterates the allegations set forth in paragraph **1 through 122** inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

124.    The New York State Executive Law; Human Rights Law ("NYSHRL") prohibits unlawful discriminatory employment practices. Section § 296 of the NYSHRL, provides in pertinent part that, "[I]t shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." (*Emphasis Added*) Defendant has engaged in violation of the foregoing statute by virtue of its unlawful discriminatory employment practices as more fully detailed and emphasized above.

125.    As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, loss of employment, loss of income, loss of other employment benefits, promotional opportunities as loss of sleep, great expenses, damage to her reputation, emotional injury to her mind and person, and other injuries not readily apparent.

126.   As a direct result of Defendant's act and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, plus costs and reasonable attorney fees.

## COUNT VI

## RETALIATORY DISCHARGE IN VIOLATION OF
## NEW YORK STATE HUMAN RIGHTS LAW § 296(1)

127.   Plaintiff repeats and reiterates the allegations set forth in paragraphs **1 through 126** inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

128.   That the above discriminatory pattern and practice based on age, race, creed, color, religion, national origin, as committed by Defendant, its agents and employees, violates New York State Human Rights Law Section 296(1)(e).

129.   Defendant unlawfully brought about the wrongful and pre-textual termination of Plaintiff's employment as a direct result of Plaintiff opposing Defendant's discriminatory and/or retaliatory practices forbidden under New York State Human Rights Law section 296(1)(e).

130.   That by reason of the aforesaid discriminatory practices and/or discrimination in the terms, conditions or privileges of Plaintiff's employment with Defendant, Plaintiff has suffered and continues to suffer loss of income and loss of other employment benefits, humiliation, embarrassment, great financial expense and damage to her reputation.

131.   As a result of Defendant's acts, Plaintiff is entitled to the maximum monetary damages and penalties available by law, as well as costs and attorney fees, the sum to be determined by jury trial.

## COUNT VII

**NEW YORK CITY HUMAN RIGHTS LAW §8-107(1)(a):** *Gender Based*

132.    Plaintiff repeats and reiterates the allegations set forth in paragraph **1 through 133** inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

133.    Section 8-107(1)(a) of the New York City Humans Rights Law ("NYCHRL") prohibits unlawful discriminatory practices in terms of employment. Section 1(a) of said statute provides in pertinent part that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment. Defendant has engaged in violation of the foregoing statute by virtue of its unlawful discriminatory employment practices as more fully detailed and emphasized above.

134.    As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, loss of employment, loss of income, loss of other employment benefits, promotional opportunities as well as emotional distress, great financial expense, damages to reputation, and has incurred damages thereby.

135.    As a direct result of Defendant and and/or failure to act, Plaintiff is entitled to the maximum monetary damages and penalties available by law, equitable remedies, plus costs and reasonable attorney fees.

**COUNT VIII**

**BREACH OF CONTRACT**

136.   Plaintiff repeats and reiterates the allegations set forth in paragraph **1 through 135** inclusive of the instant complaint, with the same force, effect and veracity as though fully set forth hereto.

137.   Defendant JetBlue extended an offer of employment to Plaintiff, which carried with it, the expressed and implied promises that Plaintiff would be treated fairly and in good faith and not discriminated against due to her national origin during the course of her employment with Defendant.

138.   Plaintiff accepted the offer of employment and its implied promises at the time of employment.

139.   The terms and statements contained in Defendant's Employee Manual and Rules of Conduct created an implied contract with the Plaintiff, which from its expressed terms provided that Defendant would not unlawfully discriminate against the Plaintiff during its employment relationship with Plaintiff.

140.   Defendants' implied promises carried with it a duty of good faith and fair dealing in its handling of Plaintiff's employment

141.   Defendant, by and through its agents and/or employees, breached its duty to Plaintiff under the implied contract when it discriminated against Plaintiff due to her national origin; strictly scrutinized Plaintiff's employment for discriminatory reasons; and wrongfully terminating Plaintiff for pre-textual reasons.

142.   As a result of the Defendant's act and/or failure to act, Plaintiff suffered, and continues to suffer loss of earning, employment, and all other benefits accompanying her previous employment with Defendant, and is entitled to a sum in excess of the jurisdictional limits in compensatory damages.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 38(b) of the Local Rules, Plaintiff demands trial by jury for all the issues leaded herein so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court grant judgment to her containing the following relief:

a) An award to Plaintiff of her actual damages in an amount to be determined at trial for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating Plaintiff for loss of future salary and benefits;

b) Declaring that Defendant violated Title VII of Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 for the discrimination in terms and conditions of employment;

c) Declaring that Defendant violated Title VII for Disparate Treatment in the Terms, Conditions, or Privileges of Employment in Violation of Title VII of the Civil Rights Act of 1964, as Amended, 42 U.S.C. §2000e-2(A)(1);

d) Declaring that Defendant violated the Title VII of the Civil Rights Act of 1964 for Hostile Environment;

e) Declaring that Defendant violated Title VII for Discharge from Employment in Retaliation for the Exercise of Rights Protected by Title VII, 42 U.S.C. §§ 2000e to 2000e-17;

f) Declaring that Defendant violated New York State, Executive Law, Article 15, Human Rights Executive Law § 296(1)(a);

g) Declaring that Defendant violated New York State, Executive Law for Retaliatory Discharge in Violation of New York State Human Rights Law § 296(1);

h) Declaring that Defendant violated New York City, Human Rights Law, §8-107(1)(a);

i) Declaring that Defendant Breached its Contract of Implied Duty of Good Faith and Fair dealing;

j) Awarding damages to Plaintiff, retroactive to the date of her termination for loss of wages and benefits resulting from Defendant's unlawful employment practices and to otherwise render her whole for all and any losses sustained and suffered as a result of Defendant's unlawful employment practices;

k) An award to Plaintiff of the costs of this action, together with reasonable attorney fees; interest and the cost of disbursements of the action; and

l) Such other and future relief that this Honorable Court deems just and proper.


Dated: North Baldwin, New York
       March 17, 2017

                                             HENRY LAW GROUP
/s/
Chauncey D. Henry, Esq.
*Attorney for Plaintiff*
*Tatiana Morillo*
1597 Grand Avenue
Baldwin, New York 11510
Phone: (516) 366-4367
Fax: (516) 688-3955
chauncey.henry@hlawg.com